John Hart v. Commissioner. John Hart and Virginia K. Hart v. Commissioner.
Hart v. Commissioner
Docket Nos. 45791, 45792.
United States Tax Court
T.C. Memo 1955-313; 1955 Tax Ct. Memo LEXIS 25; 14 T.C.M. (CCH) 1230; T.C.M. (RIA) 55313; November 29, 1955
John S. Palmore, Esq., Ohio Valley Bank Building, Henderson, Ky., for the petitioners. Charles B. Hembree, Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion Respondent determined deficiencies in petitioners' income tax and additions to the tax, as follows: 50%
Petitioner
Year
Deficiency
Penalty
John Hart
1944
$1,260.08
$ 630.04
1945
3,078.72
1,539.36
1946
1,211.41
605.71
1947
5,423.67
2,711.84
John Hart and
Virginia K.
Hart
1948
435.46
217.73
1949
1,824.26
912.13
The questions presented are (1) whether all or part of the deficiency determined by respondent for each of the years 1944 to 1949, inclusive, is due to fraud with intent to evade tax, and (2) *26 whether the assessment and collection of the deficiencies determined by respondent for the years 1944 to 1947, inclusive, is barred by the statute of limitations, Findings of Fact Petitioners are husband and wife and residents of Henderson, Kentucky. Petitioner John Hart filed individual income tax returns for the years 1944 to 1947, inclusive, and petitioners filed joint income tax returns for 1948 and 1949. All returns were filed with the collector of internal revenue for the district of Kentucky, at Louisville. Beginning in 1939, and continuing throughout the years 1944 to 1949, inclusive, petitioner John Hart, hereinafter referred to as the petitioner, was in the farm implement business in Henderson, Kentucky. During 1948 and 1949 petitioner was also a partner in the Hart Motor Company. During the taxable years involved petitioner did not maintain complete and regular accounting records of his business transactions. He kept a day book in which he listed all sales transacted at his place of business, both on a cash and charge basis. A substantial number of petitioner's larger sales were consummated at a bank and were financed by use of chattel mortgages. The proceeds of *27 such sales were deposited with the customer's name written on the deposit slip. The sales made at the bank ordinarily were not entered in petitioner's day book. At the end of each year the petitioner determined his inventory by physical count which he priced at market. For each of the taxable years 1944 to 1949, inclusive, petitioner submitted to Everett C. Wood, a certified public accountant, for use in the preparation of income tax returns, petitioner's day book, cancelled checks, bank deposit slips, bank statements, and records of physical inventories. Except for small amounts of cash withdrawals from the cash register for grocery money, which were known to petitioner's accountant, all of the income received by petitioner was deposited in the bank and reflected on the deposit slips and statements of acount. All expenses were paid by check. In preparing the income tax returns for each of the taxable years in question petitioners' accountant used the sales as reflected on the day book and the purchase figures listed on the returns, representing expenditures as shown by cancelled checks, less an estimated adjustment to eliminate what he considered to be duplications. The following *28 schedule for the taxable years 1944 to 1949, inclusive, shows the net income reported by petitioners and the agreed net income computed on the net worth basis: Net worth
Year
Reported
Statement
1944
$4,932.12
$ 8,751.78
1945
2,832.74
12,428.57
1946
6,863.45
10,734.28
1947
6,999.41
21,149.02
1948
7,024.97
9,274.23
1949
4,777.72
13,974.06
The following schedule shows the increases in inventories and physical properties for each of the taxable years 1944 to 1949, inclusive: Physical
Year
Inventory
properties
1943
$ 3,000.00
$ 6,600.00
1944
5,803.97
17,279.75
1945
10,889.35
20,645.27
1946
10,309.08
35,740.32
1947
21,316.46
40,373.49
1948
30,236.00
48,188.93
1949
29,777.76
56,142.95
Petitioner, each year and sometimes during the year, prepared financial statements for credit purposes, showing his assets, liabilities, and net worth. During each of the taxable years 1944 to 1947, inclusive, petitioner omitted from gross income an amount in excess of 25 per cent of the amount stated in the return. The statutory notice of deficiency was mailed on October 6, 1952. The returns for 1944 to 1949, *29 inclusive, were not false and fraudulent with intent to evade tax. No part of the deficiency for each of the taxable years 1944 to 1949, inclusive, is due to fraud with intent to evade tax. The assessment and collection of the deficiencies determined for the taxable years 1944, 1945, and 1946, is barred by the statute of limitations. Opinion LEMIRE, Judge: Petitioners concede the correctness of the deficiencies determined on the net worth plus expenditures method employed by the respondent. They vigorously challenge the 50 per cent additions to the tax for fraud. The petitioners take the position that since each year they furnished their certified public accountant, Everett C. Wood, on whom they relied, with all their books and records the failure of their returns to reflect their true income was the sole responsibility of the accountant. The respondent's witnesses were the accountant who prepared the returns and the revenue agent who made the examination of petitioners' returns, both of whom admitted that the data furnished was sufficient to prepare proper returns. This was also confirmed by G. T. Davis, a certified public accountant employed by the petitioners after the *30 examination by the revenue agent was commenced, and who testified on behalf of petitioners. The evidence clearly indicates that while the data furnished was sufficient, nevertheless to have made a proper reconciliation of all the data would entail a very considerable amount of work. In fact, no one of the accountants undertook the task. Undoubtedly, the time element involved accounts for the use of estimates employed by the accountant Wood. The respondent made Wood his main witness and therefore vouched for his credibility. The only evidence contained in Wood's testimony which is unfavorable to petitioners is his statement that John Hart did not specifically advise him that the day book kept by petitioner did not contain all of his sales. The work sheets of Wood, which are in evidence, amply prove that he was not misled by the petitioner's failure to so inform him. In support of the contention that the record establishes fraud the respondent relies heavily upon the fact that petitioner, at the end of each year, prepared a financial statement showing his net worth in addition to the repeated substantial understatement of income in each of the taxable years. The petitioner is an *31 intelligent and successful business man. He kept his own books and records. Petitioner frankly testified that he examined his tax returns each year and was aware of the amount of income reported thereon. From the financial statements he prepared yearly he knew his net worth was increasing. In view of this testimony we think it incredible that at least during some of the taxable years involved petitioner did not realize the relationship between his increasing net worth to the income reported on his returns. To sustain the charge of fraud the proof must be clear and convincing. It may not be presumed or founded on mere suspicion. The record is unique in what it fails to reveal rather than what it contains. There is no evidence of any affirmative act of fraud although there is much to arouse suspicion. It has not been shown that Hart actually It has not been shown that Hart actually had knowledge that the returns were partly founded on certain estimates rather than on the data furnished. No suggestion is made that there was any collusion between the petitioner and the accountant Wood. We are persuaded that both petitioner and the accountant Wood were not too concerned as to whether *32 the returns were accurate. However, to hold that fraud has been established would, we think, exalt inference over fact. On this issue we hold for the petitioners. The final issue relates to the question of whether the assessment and collection of the deficiencies determined for 1944, 1945, and 1946, is barred by the statute of limitations. The statutory notice of deficiency was mailed on October 6, 1952. Since we have found as a fact that the returns filed for the taxable years 1944 to 1949, inclusive, were not false or fraudulent with intent to evade tax, section 276(a) of the Code is not applicable. However, since the petitioners omitted from gross income an amount in excess of 25 per cent of the amount stated in the return for each of the years 1944, 1945, 1946, and 1947, the period of limitations for such years is extended for five years by section 275(c). Therefore, the deficiencies for the taxable years 1944 to 1946, inclusive, are barred. With respect to the year 1947, the notice was mailed within the five-year period and the deficiency for that year is not barred. Decisions will be entered under Rule 50.